(No. 12806.—Decree affirmed.)

THE TRUSTEES OF EUREKA COLLEGE, Appellee, *vs.* MARY E. BONDURANT *et al.* Appellants.

*Opinion filed October 27, 1919.*

1. DEEDS—*what is a condition subsequent.* A condition subsequent is one which operates on an estate already created and vested and renders the estate liable to be defeated.

2. SAME—*a condition contrary to law or public policy is void.* The right to annex conditions to a conveyance is an incident of the right of property, but the right to impose conditions or restrictions must be exercised reasonably, and a condition the compliance with which is impossible or against law or public policy is void.

3. SAME—*effect where condition is void.* If a condition is void because compliance with it is impossible or in violation of law or public policy no estate vests in the grantee where the condition is precedent, but where the condition is subsequent the estate vests freed from the condition.

4. SAME—*effect where deed to corporation contains condition subsequent contrary to act of incorporation.* Where a condition subsequent in a deed of donation to an incorporated college requires the land to be held perpetually by the grantee and that the income therefrom shall be a perpetual fund for the use of the college, but the act incorporating the college requires that land donated be sold within ten years from the date of the donation, the condition is void and the grantee holds in fee simple.

APPEAL from the Circuit Court of Piatt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

CARL S. REED, and HERRICK & HERRICK, for appellants.

MILLS BROS. for appellee.

289 — 19

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Piatt county declaring and quieting title in appellee, the trustees of Eureka College, a corporation, to 202.25 acres of land in Piatt county.

On and prior to June 11, 1897, Thomas E. Bondurant was the owner of a large number of acres of land, including the 202 acres herein involved. Bondurant was a member of the board of trustees of Eureka College on June 11, 1897, and on said date conveyed to appellee said 202 acres of land by warranty deed, which was duly recorded. The deed reserved to the grantor the possession, use and profits of the land during his life, he to pay appellee annually on the first of March of each year, beginning March 1, 1898, $500 during his lifetime and to pay the taxes on the land. The consideration expressed in the deed was "one dollar and the trusts hereinafter stated." The deed contained the provisions that the conveyance was made upon condition that the trustees had then obtained by gifts and donations, lands, moneys or other securities in value of $100,000, in such manner that they and their successors in office should receive the income and profits therefrom for the college forever, and upon the further condition that the rents, issues and profits from the land conveyed by the deed should be applied and used only for the use and benefit of Eureka College under the direction of its trustees, and that the receipts from the land should not be otherwise used but should be and remain a perpetual fund for such use and purpose. It was further provided that the trustees of the college should pay all taxes on the land out of the rents and profits derived therefrom or some other fund, "and in case of failure to pay such taxes, or upon failure to use the said lands, and the rents, issues and profits thereof, as in and by this deed provided, the title of the said lands shall revert to and vest in the grantor, or, in case of his death,

in his heirs or assigns, and this conveyance and everything herein contained shall cease and 'be absolutely null and void." Bondurant was never married. He resided in Piatt county and died testate January 16, 1905, and after making certain specific bequests 'he devised the residue of his estate to certain missionary societies. His will was duly admitted to probate, his estate administered and settled and the executrix discharged. Bondurant's heirs were a brother, two sisters and a large number of nephews and nieces. After his death appellee went into possession of the land, has remained in possession and paid the taxes thereon and received the rents and profits therefrom.

The bill in this case was filed in September, 1918. The bill alleged that at the time the deed was made appellee had to the satisfaction of Bondurant obtained by gifts and donations, lands, moneys and other securities of the value of $100,000 in such manner that the income therefrom was to be used for the benefit of the college. The bill alleged that the conditions that the income from the land conveyed should be used only for the benefit of the college, that the receipts and income from said land should be and remain a perpetual fund for such use, that the taxes were to be paid by the grantee out of the rents and profits or from some other fund, and upon the failure to use said land and the rents and profits therefrom as provided in and by the deed the title should revert to and vest in the grantor or his heirs or assigns and the conveyance be and become null and void, were contrary to the provisions of section 6 of the act incorporating appellee, contrary to law and contrary to the public policy of this State, and that said conditions were and are null and void and of no force or effect and appellee became seized in fee simple of said real estate. The bill alleged that the act incorporating appellee was a private act; that the conditions in said deed are a cloud upon appellee's title and tend to depreciate its value and prevent the sale of the land; that appellee desires to sell the land

and apply and use its value and the income therefrom for the benefit of Eureka College under the direction of its trustees, and that the same be and remain a perpetual fund for such use and purpose, in accordance with the provisions of said section 6 of the act incorporating appellee. The heirs of Bondurant, his residuary legatees and devisees and the Attorney General of Illinois were made parties defendant to the bill. No question of fact raised by the answers is presented to us for decision. The cause was referred to the master in chancery, who, after hearing certain proofs offered, reported his conclusions that the conditions in the deed contained to limit the title of appellee are contrary to the provisions of the act of the General Assembly creating and incorporating appellee, are contrary to the public policy of the State of Illinois and that said conditions of limitation are null and void, and that appellee became and is seized in fee simple of said real estate. The master recommended a decree granting the relief prayed in the bill. Exceptions to the master's report were overruled by the chancellor and a decree entered granting the relief prayed.

Both parties are agreed that the conveyance was on condition subsequent, viz., (1) that appellee had then obtained by gifts and donations, lands, moneys or other securities of the value of $100,000 for use of the college, as stipulated in the deed; and (2) that the rents and profits of the land conveyed should be used for the benefit of the college, and that such receipts should be and remain a perpetual fund for such use and purpose and in case of failure of these conditions the title to revert. It is not denied by appellants that appellee has complied with the first condition, and it is not denied by appellee that by its bill it seeks to avoid compliance with the second condition.

Appellee was incorporated by special act of the General Assembly approved February 6, 1855, entitled "An act to incorporate Eureka College." Section 6 of the act was set out in full in the bill and the entire act was offered in evi-

dence. The act authorizes appellee to acquire, hold and convey real and personal property in all lawful ways. Section 6 is as follows: "The trustees shall faithfully apply all funds collected by them, according to the best of their judgment, in erecting suitable buildings, in supporting the necessary instructors, officers and agents, the procuring books, maps, charts, globes and all philosophical and chemical apparatus to aid and promote sound learning in the institution: *Provided,* that in case any donation, devise or bequest shall be made for particular purposes accordant with the objects of the institution and the trustees shall accept the same, every such donation, devise or bequest shall be applied in conformity with the express condition of the donor or devisor: *Provided, also,* that if the donation be in real estate, that the lands be sold within ten years from the date of said donation and the value thereof be applied as specified by the donor."

A condition subsequent is one which operates on an estate already created and vested and renders the estate liable to be defeated. (*Koch* v. *Streuter,* 232 Ill. 594; *Nowak* v. *Dombrowski,* 267 id. 103; *Star Brewery Co.* v. *Primas,* 163 id. 652; 4 Kent's Com. 126.) The right to annex conditions to a conveyance is an incident of the right of property, but the right to impose conditions or restrictions must be exercised reasonably, with due regard to the law and public policy. A condition the compliance with which is impossible or in violation of law or public policy is void. If such a condition is a condition precedent no estate vests in the grantee, but if it is a condition subsequent the estate vests freed from the condition and the grantee's estate is absolute. These principles, of universal application, have been so frequently and fully discussed in reported decisions and by text writers that it is unnecessary to do more than refer to some of the authorities. *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592; *Gray* v. *Chicago, Milwaukee and St. Paul Railway Co.* 189 id. 400;

*Hite* v. *Cincinnati, Indianapolis and Western Railroad Co.* 284 id. 297; Tiedeman on Real Prop. 228, 229; 2 Washburn on Real Prop. (3d ed.) 447, 448; 1 Tiffany on Real Prop. 167.

Appellee was created by the act of 1855 a corporation to have perpetual succession, with power to hold and convey real estate. Section 6 defines the purposes for which funds collected by the corporation shall be used, and in case of a donation of land, that it shall be sold "within ten years from the date of said donation and the value thereof be applied as specified by the donor." Compliance with the condition that the rents, issues and profits from the land donated should be and remain a perpetual fund for the use of the college would require that the land be held perpetually by appellee. This it was forbidden to do by the law, which required appellee to sell within ten years land donated to it, and where the donor had expressed the particular purpose and use to be made of the donation, the proceeds of the sale are required to "be applied as specified by the donor." Under the act of incorporation, where land donated to appellee is sold, the proceeds of the sale are to be held subject to the same trust purposes upon which the land was donated and held by the college during the time it could lawfully hold the land. In other words, the income from the money received from the sale of the land will be required to be used for the same purposes the income from the land was required to be used by the conditions of the donation, the *corpus* of the fund to be used only to produce an income.

The decree of the circuit court is supported by the law, and it is affirmed.             *Decree affirmed.*